**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ELLAINA FAISON | ) Civil Action No. 1:24-cv-00556-WO-JEP |
| Plaintiff, | ) |
| vs. | ) **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| LABORATORY CORPORATION OF AMERICA HOLDINGS, doing business as LabCorp, | ) |
| Defendant. | ) |

Defendant, Laboratory Corporation of America Holdings, d/b/a LabCorp ("Labcorp"), hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure Rule 56(a).

## INTRODUCTION

Plaintiff, Elliana Faison ("Plaintiff"), an African American woman with a disability,[1] was terminated from her employment with Labcorp after she: (i) exhausted all legally protected leave; (ii) was provided with six months of leave as a reasonable accommodation under the ADA; (iii) could not return to work with any accommodation; and (iv) remained unable to provide Labcorp with a return-to-work date.

---

[1] For purposes of this motion only, Labcorp accepts that Plaintiff suffers from a disability as defined by the Americans with Disabilities Act of 1990 ("ADA"). Labcorp does not waive and instead preserves its right to challenge the legitimacy and sufficiency of Plaintiff's purported disability, should this matter proceed to trial.

322634520.7

Plaintiff's four causes of action asserted against Labcorp all fail as a matter of law. Plaintiff's (i) disability discrimination claim under the ADA and (ii) race discrimination claim under Title VII of the Civil Rights Act ("Title VII"),[2] fail as a matter of law because Plaintiff was unqualified for her position. Indeed, she admitted in her deposition that she could not perform the essential functions of her position, even with accommodation. Even if she were qualified (which Labcorp denies), Plaintiff was terminated for the legitimate, non-discriminatory reasons stated above. In addition, Plaintiff has not, and cannot, identify a single similarly-situated comparator who was treated more favorably.

Plaintiff's ADA failure to accommodate claim similarly fails because Labcorp accommodated Plaintiff by providing her with over six months of leave and, as Plaintiff admits, no reasonable accommodation would have enabled her to return to work. There is no legal obligation for an employer to provide an employee with indefinite leave as a reasonable accommodation under the ADA.

Plaintiff's retaliation claims fail as a matter of law because Plaintiff did not engage in protected activity (as alleged in the

---

[2] Plaintiff failed to plead numbered causes of action in the Complaint, thus these causes of actions are those that can be reasonably construed from the Complaint. In her deposition, Plaintiff testified that she pled a cause of action for negligence (*See* Excerpts from Deposition Transcript of Ellaina Faison ("Pl's Dep."), attached as <u>Exhibit A</u>, P35/L24-P36/L11); however, the Complaint is devoid of any mention of negligence or its requisite elements and thus is not addressed in this Memorandum.

322634520.7

Complaint) and, regardless, was terminated for the legitimate, non-retaliatory reasons stated above.

Because all of Plaintiff's claims fail as a matter of law, and there are no questions of material fact, summary judgment is appropriate on all of Plaintiff's claims.

<u>**UNCONTESTED STATEMENT OF FACTS**</u>

I.   <u>**Plaintiff's Employment with Labcorp**</u>

1.   Labcorp hired Plaintiff on May 31, 2016, as a Technologist Trainee.  (Pl's Dep. P50/L13-17.)

2.   During her employment, Plaintiff worked in the Toxicology Laboratory at Labcorp's Burlington, North Carolina facility (the "Lab"). (Pl's Dep. P54/L18-21.)

3.   Plaintiff was promoted twice—once to "Technologist," and then again to "Senior Technologist," the position she held at termination. (*Id.* P51/L8-12, P51/L25-P52/L9, P52/L13-15).

4.   As a Senior Technologist, Plaintiff directly reported to a Lab Supervisor, who in turn reported to the Lab Manager.   (*Id.*; Declaration of Yvonne Wright ("Wright Decl."), attached as <u>Exhibit B</u>, ¶3.)

5.   At the time of Plaintiff's termination, the Lab Supervisor was Eirika Lewis ("Ms. Lewis"), and the Lab Manager was Yvonne Wright ("Ms. Wright").  (Pl's Dep. P53/L8-12;L22-24.)

II.  <u>**The Senior Technologist Role and Lab Environment**</u>

6.   As a Senior Technologist, Plaintiff's primary responsibility was performing moderate-to-high complexity laboratory tests and assays.

322634520.7

(*See* Pl's Dep. Ex. 7.) Plaintiff was required to lift reagent bottles, mobile phases, lab samples, and other specimens throughout her workday. (*Id.* P66/L14-23.)

7.    The Senior Technologist position required the "utilization of fingers and hands, standing—remaining on one's feet in an upright position…handling-seizing, holding [and] grasping." (*Id.* Ex. 7). Plaintiff was required to use both of her hands and arms to perform the essential functions of her role.    (*Id.* P65/L19-P66/L8.) Plaintiff testified that "[e]verything" about her daily work was physical. (*Id.* P67/L1-5.)    Plaintiff's responsibilities were primarily performed standing, not seated.  (*Id.* P63/L7-9, P65/L12-15.)

8.    The required instruments for specific tests or assay steps were located across numerous laboratory benches throughout the Lab.  (*Id.* P63/L13-20.) Accordingly, to perform the functions of her position, Plaintiff had to continually move throughout the Lab.  (*Id.* P63/L7-9, P65/L12-15.)

9.    The entire Lab was brightly lit with "fluorescent" lighting. (*Id.* P64/L16-25.)

10.    Plaintiff's work also required her to use a computer "constantly" throughout the course of her day to process and tag individual specimens.  (*Id.* P69/L18-24.)

322634520.7

### III. **Plaintiff's Personal Injury, Subsequent Leaves of Absence, and Work Restrictions**

11.   On May 19, 2022, Plaintiff suffered an injury to her head and left elbow.[3] (Compl. ¶¶11-13.)

12.   In connection with her injury, Plaintiff was unable to report to work on May 20, 2022, and remained on a continuous leave of absence through her termination of employment on February 27, 2023.  (*See* Pl's Dep. Ex. 15.)

13.   Plaintiff was provided continuous leave under the FMLA, which was exhausted on August 10, 2022.[4] (*See id.*) Plaintiff remained unable to return to work on August 11, 2022.  (*Id.* P82/L23-25.)

14.   In addition to FMLA leave, Plaintiff was on extended short-term disability leave through November 18, 2022, until such benefits were exhausted.  (*See id.* Ex. 15.)

---

[3] Specifically, Plaintiff suffered a concussion and bruised ulnar nerve in her left arm in connection with the injury.  (Pl's Dep. P77/L24-P78/L2.)  These injuries are the subject of an active workers' compensation claim.  (*Id.* P79/L17-22.)

[4] In connection with her leave of absence, Plaintiff communicated with Labcorp's third-party leave administrator, ReedGroup, Inc. ("Reedgroup"), which Labcorp utilizes to handle all employee leave and accommodation requests, including short term disability, FMLA requests, and ADA accommodation requests. (*See* Declaration of Joni DiSantis ("DiSantis Decl."), attached as <u>Exhibit C</u>, ¶3.) Employees communicate directly with ReedGroup throughout the process.

322634520.7

15.   Plaintiff was not medically cleared to return to work on November 19, 2022.[5] (*See id.*)

16.   Therefore, as a reasonable accommodation under the ADA, Labcorp provided Plaintiff with a leave of absence after Plaintiff's FMLA leave was exhausted and concurrent with her short-term disability leave, through November 18, 2022.   (Pl's Dep. P91/L20-25).

17.   Plaintiff remained unable to return to work on November 19, 2022. Nevertheless, Labcorp granted her another continuous leave of absence as a reasonable accommodation under the ADA, through February 12, 2023.  (Pl's Dep. P93/L6-8).

18.   Thus, Labcorp provided Plaintiff with over six months of leave as an ADA accommodation. (Pl's Dep. P116/L25-P117/L5.)

19.   Throughout Plaintiff's leave, Plaintiff's medical providers noted that she should remain out of work unless certain medical restrictions could be accommodated.   Those accommodations included a light duty, no lifting, pushing or pulling with her left arm, wearing dark glasses, and using dark mode on computer screens.   (Pl's Dep. P85/L16-23; Wright Decl. ¶6.)

---

[5] In her Complaint and deposition, Plaintiff references her brief return to the Lab on November 21, 2022. (*See* Compl. ¶17; Pl's Dep. P88/L16-24.) On this date, Plaintiff arrived at the Lab although she had not been medically cleared to return to work. (*Id.*) Given that Plaintiff had not been cleared to return to work without restrictions, and that Labcorp could not accommodate her medical restrictions, Plaintiff was not permitted to return to work and subsequently was provided with an additional leave of absence. (*See* Wright Decl. ¶¶8-9.)

322634520.7

20. After reviewing Plaintiff's job requirements, Labcorp determined that Plaintiff's requested accommodations would not enable her to perform the essential functions of her position, a fact conceded by Plaintiff during her deposition. (*Id.*; Pl's Dep. P106/L13-25.)

## IV. **Plaintiff's Termination of Employment**

21. When communicating with Labcorp directly about her leave of absence, Plaintiff primarily communicated with Leave Administration Specialist, Joni DiSantis ("Ms. DiSantis"). (*See* DiSantis Decl. ¶2.)

22. In January 2023, Plaintiff communicated to Ms. DiSantis that she had a medical procedure scheduled for February 12, 2023. (*Id.* ¶9; Pl's Dep. P110/L10-21, P111/L7-10.)

23. Plaintiff represented to Ms. DiSantis that this procedure would correct her physical limitations and allow her to return to work and perform the essential functions of her position on February 14, 2023. (DiSantis Decl. ¶9; Pl's Dep. P111/L7-10.)

24. Based on Plaintiff's representation that she would be able to return to work on February 14, 2023, Labcorp agreed to extend Plaintiff's leave of absence once more, through and including February 13, 2023. (DiSantis Decl. ¶9.)

25. In early February 2023, however, Plaintiff informed Ms. DiSantis that her medical procedure had been canceled and not rescheduled. (*Id.* ¶10.) At that time, Plaintiff did not provide a return-to-work date. (*Id.*; Pl's Dep. P113/L12-23.)

26. Since Plaintiff had already been afforded an additional six months of leave as a reasonable accommodation and remained unable to

7

322634520.7

provide Labcorp with a return-to-work date, Ms. DiSantis informed Plaintiff that Labcorp would be unable to grant additional leave as an accommodation. (DiSantis Decl. ¶10.)

27. On February 21, 2023, Plaintiff submitted medical documentation from her healthcare provider requesting an additional leave of absence with an ***estimated*** end date of March 21, 2023. (*See* Pl's Dep. Ex. 14.)

28. On February 27, 2023, Ms. DiSantis informed Plaintiff that her employment was terminated, but that she was eligible for re-hire once she recovered and was able to return to work. (*Id.* Ex. 15; *see also* DiSantis Decl. ¶12.)

29. As of the date of this memorandum, (*i.e.*, three years after Plaintiff's termination of employment with Labcorp) Plaintiff still is not medically cleared to return to work and is receiving long-term disability benefits. (Pl's Dep. P119/L13-17, P122/L3-8, P202/L18-P203/L2, Ex. 16.)

## ISSUES PRESENTED

1. Is Labcorp entitled to summary judgment on Plaintiff's ADA discrimination claim, where Plaintiff was terminated because she did not have a definitive return-to-work date after being afforded nine months of leave (over six of which were provided as a reasonable accommodation)?

2. Is Labcorp entitled to summary judgment on Plaintiff's race discrimination claim, where after more than nine months of leave, Labcorp denied Plaintiff's request for certain accommodations that would not enable Plaintiff to perform the essential functions of her role?

8

322634520.7

3.   Is Labcorp entitled to summary judgment on Plaintiff's failure-to-accommodate claim be dismissed, where (a) Labcorp accommodated Plaintiff by providing her with over six months continuous leave as an ADA accommodation, and (b) no reasonable accommodations would have allowed her to perform the essential functions of her position?

4.   Is Labcorp entitled to summary judgment on Plaintiff's retaliation claims, where Plaintiff cannot establish that she was terminated for engaging in any purported protected activity and, regardless, was terminated for being unable to return to work for an indefinite period?

## LEGAL STANDARD

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate "[i]f the nonmoving party fails to make a sufficient showing to establish an essential element of its case," as "a complete failure of proof on an essential element renders all other facts immaterial." *Lumoa v. Potter*, 351 F. Supp. 2d 426, 434 (M.D.N.C. 2004) (cleaned up).  "[U]nsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006).

9

## ARGUMENT

### I.   Plaintiff's ADA Discrimination Claim Fails as a Matter of Law

Plaintiff's ADA discrimination claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[6] 411 U.S. 792, 802-05 (1973). Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id.* If she meets her initial burden, Labcorp must articulate a legitimate, non-discriminatory reason for its action. *Id.* at 801. Once such reason is articulated, the burden rebounds to Plaintiff to show that the articulated reason is mere pretext for discrimination. *Id.* at 804. Notwithstanding the shifting burden, Plaintiff, at all times, bears the ultimate burden of proving Labcorp intentionally engaged in discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 520 (1993).

### A.   Plaintiff Cannot Establish a *Prima Facie* Case of Wrongful Termination.

To establish a *prima facie* case of disability discrimination based on wrongful discharge, Plaintiff must show: (1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling Labcorp's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *See Anderson v. Diamondback Inv. Grp.,*

---

[6] Where, as here, there is no direct evidence of discrimination or retaliation, courts apply the *McDonnell Douglas* burden-shifting scheme. *See, e.g.*, *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575, 577 (4th Cir. 2015).

322634520.7

*LLC*, 117 F.4th 165, 175 (4th Cir. 2024). Plaintiff cannot demonstrate the first, third, or fourth elements of her claim.

First, Plaintiff was unqualified for her position at the time of her termination. Indeed, Plaintiff testified numerous times during her deposition that she could not perform the essential functions of her Senior Technologist position, even with the accommodations that she requested. (Pl's Dep. P99/L17-20, P106/L22-25, P119/L13-17.) Plaintiff's medical provider also submitted documentation that stated that Plaintiff was unable to return to work until the ***estimated*** date of March 21, 2023, over nine months after Plaintiff was initially granted a leave of absence. (*Id.* P117/L7-14, Ex. 4.) An employee "who cannot come to work, despite her employer's efforts to reasonably accommodate her disability, cannot be considered a qualified individual." *McNeil v. Scotland Cnty.*, 213 F. Supp. 2d 559, 569 (M.D.N.C. 2002).

Plaintiff also cannot demonstrate that she was fulfilling Labcorp's legitimate expectations at the time of discharge, given that she was on a leave of absence at the time. As noted above, "an employee who does not come to work [even if because of a disability] cannot perform *any* of h[er] job functions, essential or otherwise." *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994). Of particular instruction, this Court has held that when an employee is on leave—even due to a medical condition—she is not fulfilling her employer's legitimate expectations. *See, e.g.*, *Smith v. Noftle*, No. 1:13CV708, at *21-22 (M.D.N.C. June 11, 2015) (holding that employee failed to demonstrate that he was meeting his employer's legitimate expectations because he

11

322634520.7

had been on medical leave for over a year with no release from his physicians to return to work).

Finally, the circumstances surrounding Plaintiff's termination do not raise a reasonable inference of unlawful discrimination. Under the ADA, Labcorp was not required to hold Plaintiff's position for an undetermined amount of time. *See Starnes v. General Elec. Co.*, 201 F. Supp. 2d 549, 560-61 (M.D.N.C. 2002) (plaintiff failed to demonstrate circumstances that raised an inference of unlawful discrimination where employer was "quite tolerant of [the employee's] extended absence and dealt with it in a reasonable manner"). Accordingly, Plaintiff has not and cannot meet her *prima facie* burden, and her ADA discrimination claim should be dismissed as a matter of law.

B. <u>Labcorp Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment and Plaintiff Cannot Establish Pretext</u>.

Even if Plaintiff could meet her *prima facie* burden (which Labcorp denies), Labcorp terminated Plaintiff's employment because Plaintiff exhausted all legally protected leave, and granting additional leave as an accommodation would not enable Plaintiff to perform the essential functions of her position. (*See* Pl's Dep. Ex. 4.) This is a legitimate non-discriminatory reason for Labcorp's decision to terminate Plaintiff's employment. *See McNeil*, 213 F. Supp. 2d at 571 ("Defendant's unavailability to work is a legitimate reason for terminating Plaintiff's employment and is not a violation of the anti-retaliation provisions of Title VII or of the ADA.").

322634520.7

Therefore, to succeed on her claim, Plaintiff must provide sufficient probative evidence that Labcorp's legitimate, non-discriminatory reason for her termination is mere pretext. *Rowe v. Marley*, 233 F.3d 825, 830 (4th Cir. 2000) ("[P]roving a discrimination claim under . . . [the ADA] requires a showing that an employer's asserted non-discriminatory reason for the challenged employment action is actually a pretext."). Plaintiff has not, and cannot, establish pretext because Labcorp's proffered reasons for the adverse action "are [not] inconsistent over time, false, or based on mistakes of fact." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). Plaintiff baselessly alleges that her termination must have been discriminatory simply because she is disabled.[7] However, Plaintiff's "suspicions of ill intent are insufficient to create a genuine issue of material fact regarding pretext." *See Johnson v. Old Dominion Univ.*, 814 Fed. App'x 733, 738 (4th Cir. 2020). Plaintiff admitted that she was not medically cleared to work, and, importantly, that she was not able to perform the essential functions of her role with or without reasonable

---

[7] Plaintiff alleges that Ms. Wright's attitude toward her "changed notably for the worse approximately two months after her injury occurred." (*See* Compl. ¶20.) In her deposition, Plaintiff testified that this allegation is based on nothing more than Ms. Wright sending Plaintiff text messages while she was on leave regarding a potential return-to-work date. (Pl's Dep. P157/L18-P158/L23.) As Plaintiff's manager, Ms. Wright's neutral inquiries into Plaintiff's leave status and anticipated return-to-work date have no relevance to the issue of pretext.

13

322634520.7

accommodations, on the date of her termination. (Pl's Dep. P166/L5-19, Pl's Dep. P106/L22-25.) Those admissions alone doom her claim. *See McNeil*, 213 F. Supp. 2d at 571. Further, Plaintiff testified that Labcorp's explanation of her termination has remained consistent over time. (*Id.* P166/L20-22.) In sum, Plaintiff has failed to demonstrate that Labcorp's proffered reasons for her termination were false and pretext for discrimination. Therefore, Plaintiff's ADA discrimination claim must be dismissed. *See Rowe*, 233 F.3d at 829.

## II. <u>Plaintiff's Title VII Race Discrimination Claim Fails as a Matter of Law</u>

Plaintiff has offered no direct evidence of race discrimination, (*see* Pl's Dep. P132/L15-17, P134/L11-13, P135/L7-9). Therefore, Plaintiff's Title VII race discrimination claim must be analyzed under the *McDonnell Douglas* burden-shifting framework described *supra*. *See Guessous v. Fairview Prop Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

### A. <u>Plaintiff Cannot Establish a *Prima Facie* Case of Race Discrimination</u>.

To establish a *prima facie* case of race-based disparate treatment under Title VII, Plaintiff must show that she: (1) is a member of a protected class; (2) is qualified for her position; (3) experienced an adverse employment action; and (4) received different treatment from similarly situated employees outside of her protected class. *See Gairola v. Commonwealth of Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985). Plaintiff cannot establish the second, third, or fourth elements of her claim.

14

As previously discussed (*see* Section 1.A, *supra*), Plaintiff was not qualified for the Senior Technologist position at any time following her injury in May 2022. She was unable to report to work for over nine months and could not provide a definitive return to work date. (*See* Pl's Dep. P100/L19-24, P114/L11-19, Ex. 14.) Further, Plaintiff is ***still*** unable to work at present (three years later). (*Id.* P119/L13-17.) Plaintiff cannot be qualified for a position whose essential functions she cannot perform. *See Wilson v. Amtrak Nat'l R.R. Corp.*, 824 F. Supp. 55, 59 (D. Md. 1992) (holding that where a plaintiff was absent from work for medical reasons, he must demonstrate that he was medically able to return to work to be qualified for the position).

Plaintiff similarly cannot establish the third element of her race discrimination claim. In her Complaint, Plaintiff alleges that the adverse action she purportedly suffered was that Labcorp denied her requests for reasonable accommodations while purportedly granting accommodations "greater" than that needed by the Plaintiff to at least four non-African American employees. (Compl. ¶20)[8] That simply is not true, and there is no evidence whatsoever to support Plaintiff's bald allegation. As an initial matter, Labcorp ***did*** accommodate Plaintiff by providing her with continuous leave. *See infra* Section III. And with

---

[8] The Complaint does not include a wrongful termination claim premised on her race. (*See* Compl. ¶20.) Accordingly, Plaintiff has not pled that her termination constitutes an adverse employment action with respect to her race discrimination claims.

15

respect to the accommodations that Plaintiff requested that were denied, Plaintiff admitted in her deposition that those accommodations would not have enabled her to perform the essential functions of her position. (Pl's Dep. P106/L22-25, P122/L9-22, P139/L18-23.) Therefore, the denial of those requested accommodations was in no way discriminatory, as the requested accommodations were not reasonable as a matter of law. *See infra* Section III.

Nevertheless, Plaintiff's claim fails because she has not, and cannot, establish that she received different treatment from similarly-situated employees outside of her protected class. Plaintiff alleges that Labcorp must have denied her certain accommodations ***because of her race*** based on nothing more than her speculation regarding alleged accommodations provided to non-African American employees. Her argument strains credulity and is not supported by facts in the record. In order to establish this element, Plaintiff must "provide evidence that the proposed comparators are…similarly situated in all respects." *See Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (internal quotation marks and citations omitted). Plaintiff, however, testified that she was not aware of ***any*** non-African American Senior Technologists who were provided with an extended continuous leave as a reasonable accommodation. (Pl's Dep. P140/L2-5.) That is because none exist—a fact fatal to Plaintiff's claim. *See Cosby*, 93 F.4th at 714-16 (finding Plaintiff's failure to identify valid comparators was fatal to her claim).

322634520.7

While Plaintiff identified the four alleged comparators in her discovery responses as Ken Comito ("Mr. Comito"), David Stephens ("Mr. Stephens"), Jose Correra[9] and "Erin a/k/a/ Kaleigh LNU" ("Kaleigh")[10] (See Pl's Dep. Ex. 4.), Plaintiff provided no evidence that ***any*** of these individuals: (1) suffered from any disability; (2) requested a reasonable accommodation; or (3) were granted a reasonable accommodation.[11] Further, none of the purported comparators are actual comparators. Indeed, of the four alleged comparators, only one, Mr. Correa, worked in the same position as Plaintiff, but he is not similarly situated to Plaintiff because he was able to perform the essential functions of the position. (*id.* at P135/L20;P136/L8-13; *see also* Declaration of Brittany Winston ("Winston Decl."), attached as <u>Exhibit D</u>). The other three individuals worked in completely different positions

---

[9] Upon reasonable investigation, Labcorp believes Plaintiff intended to refer to employee Jose Correa ("Mr. Correa").

[10] Labcorp was unable to identify any such employee after reasonable investigation (*see* Winston Decl. ¶ 7), but Plaintiff testified in her deposition that Kaleigh would have different job duties and functions than she did, rendering her an insufficient comparator. (*See* Pl's Dep. P136/L14-20.)

[11] During her deposition, Plaintiff admitted that she did not have any first-hand knowledge of the specific accommodations requested by the alleged comparators nor the limitations posed by their alleged underlying disabilities. (*See id.* at Pl's Dep. P128/L5-7; P129/L10-13; P125/L20-22.)

322634520.7

and, thus, are not sufficiently similar. *See Cosby*, 93 F.4th at 714. Moreover, Plaintiff's own admissions belie her claim with respect to the three individuals. Plaintiff testified that: (1) Mr. Comito was permitted to work from home to care for his granddaughter, which she admitted was not a disability, (*See* Pl's Dep. P127/L25-P128/L4); (2) Mr. Correa was able to return to work after suffering a broken collarbone, (*id.* at P127/L16-24); and (3) Mr. Stephens suffered from alleged disabilities that occasionally caused temporary episodes and flare ups, notably anxiety and irritable bowel syndrome, but did not prevent him from performing the essential functions of his job. (*Id.* at P124/L24-P125/L2.)

The record is simply devoid of any evidence that Plaintiff was treated differently than any of the four alleged comparators. Indeed, Plaintiff actually was provided more generous accommodations than any of the alleged comparators. For example, Mr. Correa was on a leave of absence for just over a month as a reasonable accommodation under the ADA, but he was able to return to work and perform all of the essential functions of his position.[12] (Winston Decl. ¶ 6). The ADA requires that employers evaluate each request for accommodation on a case-by-case

---

[12] Plaintiff testified that when Mr. Correa returned to work Labcorp accommodated no lifting or pipetting. (Pl's Dep. P127/L6-11.) However, Labcorp has no record of Mr. Correa requesting or receiving an accommodation other than a period of continuous leave in 2022. (Winston Decl. ¶ 6). Given that Plaintiff and Mr. Correa were employed in the same position, Plaintiff would not have firsthand knowledge of Mr. Correa's accommodations. (Pl's Dep. P135/L17-P136/L2.)

18

322634520.7

basis, *J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663, 671 (4th Cir. 2019), which is exactly what Labcorp did and does, without consideration of an employee's race or other protected characteristics. Plaintiff has not and cannot point to a scintilla of evidence to even suggest that the decision to deny Plaintiff's requested accommodations was in any way motivated by her race or that she was treated differently with respect to similarly situated, non-African American employees.

Therefore, Plaintiff has not established the second, third, or fourth elements of her *prima facie* case, warranting the summary dismissal of her race discrimination claims as a matter of law.

B. <u>Labcorp Had a Legitimate, Non-Discriminatory Reason for Denying Her Requested Accommodations and Plaintiff Cannot Demonstrate Pretext</u>.

Even if Plaintiff could establish a *prima facie* case of race discrimination (which she cannot), Labcorp had a legitimate, non-discriminatory reason for denying Plaintiff's requested accommodations, as discussed *infra* Section 3.B—the requested accommodations would not permit Plaintiff to return to work and perform the essential functions of her position. *See Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 522 (M.D.N.C. 2007) ("[A] reasonable accommodation is one 'which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.'") (quoting *Myers v. Hose*, 50 F.3d 278,283 (4th Cir. 1995)). Thus, Labcorp has met its burden to articulate a legitimate, non-discriminatory reason for denying Plaintiff's requested accommodations.

322634520.7

Plaintiff is unable to prove by a preponderance of the evidence that Labcorp's explanation is pretext for discrimination. *See Reeves*, 530 U.S. at 143. Plaintiff admitted that Labcorp never offered an alternative reason for denying her requested accommodation or terminating her employment. (Pl's Dep. P166/L20-22.) Plaintiff has not articulated how Labcorp's explanation for denying her requested accommodation was pretextual, nor has she provided any evidence whatsoever of pretext. As such, Plaintiff's race discrimination claim fails as a matter of law.

## III. **Plaintiff's ADA Failure to Accommodate Claim Fails as a Matter of Law**

To succeed on her failure to accommodate claim under the ADA, Plaintiff must show that: (1) she suffers from a disability; (2) her employer had notice of her disability; (3) with reasonable accommodations, she could perform her position's essential function; and (4) her employer refused to make such accommodations. *Brown v. Martin Marietta Mats., Inc.*, 440 F. Supp. 3d 503, 512 (M.D.N.C. 2020). As a matter of law, Plaintiff cannot demonstrate that with a reasonable accommodation she could perform her position's essential function or that Labcorp refused to make a reasonable accommodation for Plaintiff's disabilities.

### A. Labcorp Provided Plaintiff with Six Months of Leave as a Reasonable Accommodation.

As discussed above, Labcorp accommodated Plaintiff by providing her with over six months of continuous leave under the ADA, after she had exhausted her legally protected FMLA leave, in the hopes that

20

322634520.7

additional leave would permit her to recover from her injuries and return to work. (Pl's Dep. P116/L25-P117/L14; Wright Decl. ¶9.) Plaintiff admitted that but-for the accommodation of leave afforded by Labcorp, her employment would have been terminated when she exhausted all legally protected leave, given that she was unable to return to work at that time. (*Id.* P148/L5-19.) "Leave may be reasonable where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work." *Hannah v. United Parcel Service, Inc.*, 72 F.4th 630, 637 (4th Cir. 2023). However, at the time of her termination, after over nine months of leave and without a definite return to work date, additional leave was no longer a reasonable accommodation, as it would not permit Plaintiff to perform the essential functions of her position. *See Gladden.*, 495 F. Supp. 2d at 522.

B.  <u>Plaintiff Could Not Perform the Essential Functions of Her Position with the Other Accommodations Requested</u>.

Plaintiff contends that the leave she was provided under the ADA "would not be classified …as an accommodation," and that she would have been able to return to work with the other accommodations that she requested. (Pl's Dep. P147/L7-11.) This assertion simply is not supported by the record or applicable law. The ADA specifically authorizes unpaid leave as a reasonable accommodation. *See Hannah*, 72 F.4th at 636. Just because Plaintiff would have preferred a different accommodation does not negate the fact that an unpaid leave of absence

21

is a reasonable accommodation under the ADA (and was supported by documentation submitted by Plaintiff's medical providers). *See id.*

Furthermore, despite documentation from Plaintiff's medical providers that she required a continuous leave of absence through an **_estimated_** return to work date of March 21, 2023, as a reasonable accommodation, Plaintiff contends that she could have returned to work with alternative accommodations that Labcorp was unwilling to provide. However, at deposition, Plaintiff admitted that those requested alternative accommodations would not have enabled her to perform the essential functions of her position. (Pl's Dep. P105/L23-P106/L25.) With respect to the alternative accommodations that Plaintiff requested that Labcorp did not grant,[13] Plaintiff admitted that light duty and no pushing, pulling, or lifting with her left arm accommodations would not enable her to perform the essential functions of her Senior Technologist position. (*Id.* P106/L18-25) ("A. No. When I returned to work, I wasn't going to be able to do what I was doing before I got injured. I need both arms and both hands to do what I was doing before.") As such, these requested accommodations were not reasonable as a matter of law, *see Gladden*, 495 F. Supp. 2d at 522, and, as Plaintiff admits, there is no

---

[13] The requested accommodations included light duty work; no lifting, pushing, pulling with her left arm; the use of a screen protector on her computer and her computer on dark mode; wearing dark shades at work; and frequent breaks. (Pl's Dep. P85/L16-23; Wright Decl. ¶6.)

322634520.7

way that the requested accommodations would have allowed her to return to work in her position of Senior Technologist.[14] *See id.*

C. Plaintiff Has Failed to Allege She Was Entitled to An Alternative Position as a Reasonable Accommodation.

During her deposition, Plaintiff testified that Labcorp should have given her an alternative position that she would have been able to perform with the accommodations identified by her medical providers. (Pl's Dep. P107/L1-P108/L3.) As an initial matter, the Complaint is devoid of ***any*** mention that: (i) an alternative position existed; (ii) the alternative position was at or lower than Plaintiff's Senior Technologist position; (iii) Plaintiff was qualified to perform the essential duties of the alternative position with a reasonable accommodation; and (iv) Labcorp failed to provide Plaintiff with an alternative position.[15] *See Stephenson v. Pfizer Inc.*, 49 F. Supp. 3d 434, 442-43 (M.D.N.C. 2014) (providing elements of failure-to-reassign claim) (vacated on other grounds). As such, the Complaint cannot reasonably be construed to allege that Labcorp failed to accommodate Plaintiff by failing to reassign her to a different position. Further,

---

[14] Given that the no lifting, pushing, or pulling with her left arm and light duty work would not enable Plaintiff to perform the essential functions of her position, Plaintiff would not be able to carry out the essential functions of her position even if she wore dark shades at work, used her computer on dark mode, and took frequent breaks. (*See id.*)

[15] Failure to reassign is a cognizable claim under the ADA, but no such claim is pleaded in Plaintiff's Complaint. (*See* Compl.)

322634520.7

Plaintiff conceded in her deposition that at the time of her termination, she was not cleared to return to work to perform ***any*** position and had requested an additional leave of absence as an accommodation. (*See* Pl's Dep. P99/L17-P101/L3, Ex. 14.) Even now, Plaintiff is not medically cleared to return to work (even with restrictions) and is receiving long-term disability benefits. (*Id.* at P119/L13-17; P200/L21-25.) As such, Plaintiff's contention that an alternative position would have accommodated her disabilities is nonsensical.

Therefore, because Plaintiff cannot demonstrate that she could perform the essential functions of her position with her requested accommodations, and because Labcorp can demonstrate it provided Plaintiff with a continuous leave of absence as an accommodation under the ADA for six months until it was no longer reasonable given her uncertain recovery date, Plaintiff's failure to accommodate claim fail as a matter of law. *See Brown v. Martin Marietta Mats., Inc.*, 440 F. Supp. 3d at 512 (articulating a successful failure to accommodate claim requires a showing that the employee could perform the essential functions of the position with a reasonable accommodation).

IV.  **Plaintiff's Retaliation Claims Fail as a Matter of Law**

A.  Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation under the ADA.

To establish a *prima facie* case of unlawful retaliation under the ADA, Plaintiff must show that: (1) she engaged in a protected employee activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her participation in the protected activity and the adverse employment action. *See Freilich v. Upper Chesapeake*

24

*Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). Plaintiff cannot establish her *prima facie* case because she has offered no probative evidence that she engaged in protected activity, or that there is a causal connection between any purported protected activity and an adverse employment action. Moreover, Labcorp had a legitimate non-retaliatory reason for terminating her employment.

In the Complaint, Plaintiff vaguely alleges that Labcorp retaliated against her by "treating her worse than other non-complaining employees" because of "her resistance to discrimination on account of disability/perceived disability." (Compl. ¶22.) When asked in her deposition to explain her "resistance to discrimination," Plaintiff was unable to provide a coherent response. Plaintiff testified that her "disabilities are [her] work restrictions." (Pl's Dep. P167/L14-21.) When asked who she was referring to in the Complaint as the "non-complaining employees," (*see* Compl. ¶22), Plaintiff testified she was referring to all Labcorp employees who did not "get hurt on the job" during her tenure. (Pl's Dep. P170/L20-P171/L4.) According to Plaintiff, being "hurt on the job" means making a complaint. (*Id.* P171/L12-17.) Plaintiff otherwise did not identify a single instance in which she complained about unlawful activity under the ADA, or that she otherwise engaged in protected activity of any sort. Labcorp acknowledges that requesting a reasonable accommodation is protected activity for the purposes of an ADA retaliation claim, *see Jacobs*, 780 F.3d at 577, but Plaintiff never even alleges, or offers any evidence to support, that she was retaliated against for requesting an accommodation. Again,

25

Plaintiff alleges only that she was (i) retaliated against for being disabled, and (ii) treated differently than other employees who were not injured at work. Merely experiencing a workplace injury, or simply having a disability within the meaning of the ADA, do not constitute protected activities. *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has ***opposed any act or practice made unlawful by***" the ADA) (emphasis added).

Even if Plaintiff could establish that she engaged in a protected activity (which she has not and cannot), her retaliation claims still fail because she cannot establish that she was terminated ***because of*** her purported protected activity. *Freilich,* 313 F.3d at 216. Plaintiff has offered no evidence that her termination was caused by her alleged protected activity. To the contrary, Plaintiff admitted in her deposition that her employment was terminated because she was unable to return to work after an extended period of leave and could not provide a return-to-work date. (Pl's Dep. P117/L7-14.) As explained *supra*, Labcorp only terminated Plaintiff's employment when, after over nine months of leave, Plaintiff submitted documentation that requested additional leave of an unspecified duration. Labcorp was under no obligation to continue holding Plaintiff's position indefinitely until she was able to return to work. *See Myers*, 50 F.3d at 280. There is simply no factual basis for Plaintiff's claim that her termination was retaliatory; thus, her retaliation claim fails as a matter of law. *See, e.g.*, *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (dismissing retaliation claim because plaintiff failed to provide any evidence of a

322634520.7

causal link between protected activity and termination beyond speculation).

      B.    <u>Labcorp Can Establish a Legitimate, Non-Retaliatory Reason for Plaintiff's Termination of Employment and Plaintiff Cannot Demonstrate Pretext</u>.

As discussed in Section II.B *supra*, Labcorp has established a legitimate, non-retaliatory reason for Plaintiff's termination of employment—her inability to return to work after over nine months of leave—and Plaintiff is unable to demonstrate pretext. The record is devoid of any facts that support Plaintiff's contention that her termination was pretext for retaliation.

<u>**CONCLUSION**</u>

WHEREFORE, for the reasons set forth herein, Labcorp respectfully requests that this Court enter summary judgment in its favor on all counts and dismiss the Complaint with prejudice and further requests any such other relief that the Court deems equitable and just.

Respectfully submitted, this 25th day of March, 2025.

<div style="margin-left:30%">

<u>*/s/ M. Claire Healy*</u>
M. Claire Healy
North Carolina State Bar No 58432
David C. Lindsay
North Carolina State Bar No. 24380
K&L Gates LLP
301 Hillsborough Street
Suite 1200
Raleigh, NC 27603
Telephone: (919) 743-7304
E-mail: david.lindsay@klgates.com
E-mail: claire.healy@klgates.com

*Attorneys for Defendant*
*Laboratory Corporation of America Holdings*

</div>

27

322634520.7

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(d)(1)

The undersigned hereby certifies that this Memorandum complies with Local Rule 7.3(d)(1) and contains 6,242 words.

This 25th day of March, 2025.

/s/ M. Claire Healy
M. Claire Healy
North Carolina State Bar No 58432
David C. Lindsay
North Carolina State Bar No. 24380
K&L Gates LLP
301 Hillsborough Street
Suite 1200
Raleigh, NC 27603
Telephone: (919) 743-7304
E-mail: david.lindsay@klgates.com
E-mail: claire.healy@klgates.com

Attorneys for Defendant
Laboratory Corporation of America Holdings

322634520.7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this Defendant's Memorandum of Law in Support of its Motion for Summary Judgment was served upon the parties in this action by the Court's electronic ECF filing system.

This the 25th day of March, 2025.

> */s/ M. Claire Healy*
> M. Claire Healy
> North Carolina State Bar No 58432
> David C. Lindsay
> North Carolina State Bar No. 24380
> K&L Gates LLP
> 301 Hillsborough Street
> Suite 1200
> Raleigh, NC 27603
> Telephone: (919) 743-7304
> E-mail: david.lindsay@klgates.com
> E-mail: claire.healy@klgates.com
>
> *Attorneys for Defendant*
> *Laboratory Corporation of America Holdings*

322634520.7